**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MICHAEL ARMENDARIZ,

        Petitioner,

v.                                       No. CV 18-1144 WJ/CG

STANLEY MOYA, et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Michael Armendariz' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (the "Petition"), (Doc. 1), filed December 7, 2018; *Respondents' Answer to Michael Armendariz's pro se Petition for Writ of Habeas Corpus* (the "Response"), (Doc. 13), filed April 15, 2019; and Mr. Armendariz' *Reply Brief* (the "Reply"), (Doc. 20), filed June 18, 2019. In addition, Mr. Armendariz filed two supplements in support of his Petition, (Doc. 5) and (Doc. 8), and Respondents filed transcripts from the state district court, (Doc. 14). Chief United States District Judge William P. Johnson referred this case to the undersigned to perform legal analysis and recommend an ultimate disposition. (Doc. 21). Having considered the parties' filings and the relevant law, the Court **RECOMMENDS** that Mr. Armendariz' Petition, (Doc. 1), be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## I.    Background

On August 11, 2003, a jury found Mr. Armendariz guilty of: first-degree murder (willful and deliberate); attempt to commit first-degree murder; aggravated battery;

tampering with evidence; and possession of a firearm by a felon. (Doc. 13-1 at 1). Mr.

Armendariz was sentenced to life imprisonment plus thirteen years. *Id.* at 2. These

charges arose from Mr. Armendariz fatally shooting off-duty police officer Damacio

Montano and wounding off-duty police officer Eric Montano during a fight in the parking

lot of a sports bar in Los Lunas, New Mexico, on October 6, 2002. (Doc. 13 at 2). The

two officers were brothers. Mr. Armendariz alleges the Montano brothers were beating

his friend, Nestor Chavez, and he claims he shot the men in self-defense and in

defense of Mr. Chavez. *Id.*

      Mr. Armendariz filed a direct appeal with the New Mexico Supreme Court in

which he raised two arguments: (1) the trial court erred by preventing him from

introducing evidence of Damacio Montano's violence against his wife; and (2) Mr.

Armendariz' convictions for both aggravated battery and attempted murder of Eric

Montano violated the prohibition against double jeopardy. (Doc. 13-1 at 67-103). On

August 3, 2006, the New Mexico Supreme Court affirmed Mr. Armendariz' convictions,

holding that the instances of Damacio Montano's past behavior were not admissible for

the offered purpose and there was no double jeopardy violation. *State of New Mexico v.

Armendariz*, 2006-NMSC-036, 141 P.3d 526; (Doc 13-1 at 132-157).

      On June 6, 2007, Mr. Armendariz filed a pro se state habeas petition, (Doc. 13-2

at 1-59), which was amended by counsel on July 20, 2010, (Doc. 13-2 at 60-106); (Doc.

13-3); (Doc. 13-4); (Doc. 13-5); and (Doc. 13-6). In the state habeas petition, Mr.

Armendariz raised claims of prosecutorial misconduct, insufficiency of the evidence, and

ineffective assistance of counsel. (Doc. 13-1 at 4-12); (Doc. 13-2 at 61-105); (Doc 13-3

at 4-33). Specifically, Mr. Armendariz argued the state engaged in prosecutorial

misconduct by: (1) suppressing, losing, or destroying the original surveillance videotape from the bar; (2) suppressing and destroying blood evidence; (3) contaminating the scene of the crime; and (4) planting evidence. (Doc. 13-2 at 61, 74-87, 100-105). Mr. Armendariz further argued there was not sufficient evidence to convict him because: (1) no fingerprint or ballistic testing was done on the murder weapon; (2) he might not have fired the fatal bullet; (3) an investigator's analysis indicated the surveillance video showed something different than what was presented at trial; (4) the timing of the events shows that Mr. Armendariz could not have formed the requisite intent to commit first-degree murder; and (5) panic prevented Mr. Armendariz from deliberating before firing his weapon. (Doc. 13-3 at 4-14). Finally, Mr. Armendariz argued his counsel was ineffective because he: (1) failed to adequately investigate video, blood, and ballistics evidence, and crime scene procedures; (2) failed to conduct sufficient pre-trial interviews; and (3) excluded Mr. Armendariz from a conference where the trial court rejected Mr. Armendariz' request to fire his counsel. *Id.* at 14-33.

On July 19, 2018, the state court held a hearing on the issues raised in Mr. Armendariz' habeas corpus petition at which Mr. Armendariz and his attorney presented a witness and several exhibits. (Doc. 13-7 at 100); (Doc. 13-8 at 6). Considering the pleadings, Mr. Armendariz' offer of proof at the hearing, and the transcript from the jury trial, the state court denied Mr. Armendariz' habeas petition, (Doc. 13-8 at 6-16), as well as his motion to reconsider, *id.* at 48. Mr. Armendariz then filed a petition for writ of certiorari with the New Mexico Supreme Court, *id.* at 49-61, which was denied on November 19, 2018, *id.* at 62.

On December 7, 2018, Mr. Armendariz filed his Section 2254 Petition, raising twelve claims. (Doc. 1). First, he claims the state violated his constitutional rights by: (1) failing to preserve blood evidence; (2) losing or destroying the original surveillance video; (3) contaminating the scene of the crime; and (4) planting evidence. *Id.* at 6-8, 9-12, 21-24 (Grounds One, Three, Nine and Ten). Next, Mr. Armendariz claims his counsel was ineffective for failing to investigate blood and video-surveillance evidence. *Id.* at 8-9, 12 -13 (Grounds Two and Four). He also claims the trial court erred by: (1) allowing a witness to narrate a composite surveillance video as it was played for the jury; (2) holding an important meeting outside of Mr. Armendariz' presence; and (3) excluding evidence of Damacio Montano's prior violent conduct. *Id.* at 14-15, 19-21, 24-26 (Grounds Five, Eight, and Eleven). Finally, Mr. Armendariz claims: he has new, exculpatory witness testimony, *id.* at 15-17 (Ground Six); there was insufficient evidence to support his conviction for first-degree murder, *id.* at 17-19 (Ground Seven); and his convictions for aggravated battery and attempted murder violate double jeopardy, *id.* at 26-27 (Ground Twelve).

Respondents do not dispute that Mr. Armendariz has exhausted available state court remedies as to all of his claims, and state the claims may be evaluated on their merits. (Doc. 13 at 5). However, Respondents contend Mr. Armendariz is not entitled to relief on his claims. *Id.* at 9-27.

## II. Analysis

### A. *Governing Law and Standards of Review*

"A pro se litigant's pleadings are to be construed liberally." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Despite liberal construction of a pro se litigant's

pleadings, however, courts cannot "assume the role of advocate" for him. *Id.* Courts "are not required to fashion [a pro se party's] arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

Under 28 U.S.C. § 2254, a person in state custody may petition a federal court for relief on the ground that his detention violates the United States' Constitution or laws. § 2254(a). A petition under § 2254 may not be granted unless the state court judgment: (1) resulted in a decision contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. §§ 2254(d)(1)-(2). Federal courts must presume factual findings are correct, and a petitioner must present clear and convincing evidence to rebut that presumption. § 2254(e)(1).

A state court decision is "contrary to" clearly established law if it: (1) "applies a rule that contradicts the governing law set forth" in Supreme Court cases; or (2) if it "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision and "nevertheless arrives at a result different from" the Supreme Court decision. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court decision constitutes an "unreasonable application" of federal law when a state "unreasonably applies" Supreme Court precedent "to the facts of a prisoner's case." *Id.* at 409. The state court decision must be more than incorrect or erroneous. *Renico v. Lett*, 559 U.S. 766, 773 (2010). "Rather, the application must be 'objectively unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). This imposes a "highly

5

deferential standard of review," and state court decisions must be given the benefit of the doubt. *Id.*

### B. *Whether Mr. Armendariz is Entitled to Relief Under § 2254*

Mr. Armendariz claims that the state violated his constitutional rights by failing to properly handle evidence, (Doc. 1 at 6-8, 9-12, 21-24) (Grounds One, Three, Nine and Ten); his counsel was ineffective for failing to investigate blood and video-surveillance evidence, (*id.* at 8-9, 12-13) (Grounds Two and Four); the trial court committed errors which violated his constitutional rights, (*id.* at 14-15, 19-21, 24-26) (Grounds Five, Eight, and Eleven); he has new, exculpatory witness testimony, (*id.* at 15-17) (Ground Six); there was insufficient evidence to support his conviction for first-degree murder, (*id.* at 17-19) (Ground Seven); and his convictions for aggravated battery and attempted murder violate double jeopardy, (*id.* at 26-27) (Ground Twelve). Respondents deny Mr. Armendariz is entitled to relief on any of these claims. The Court will address each claim in turn, discussing the parties' arguments, the state courts' findings and holdings, clearly established federal law, and whether Mr. Armendariz is entitled to relief.

### 1. *Preservation/Destruction of Evidence Claims*

Mr. Armendariz claims the state violated his constitutional rights by: (1) failing to preserve blood evidence from Nestor Chavez's clothing (Ground One); (2) losing or destroying the original surveillance videotape (Ground Three); (3) destroying evidence by contaminating the scene of the crime (Ground Nine); and (4) planting evidence (Ground Ten). (Doc. 1 at 6-8, 9-12, 21-24).

Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. *California v.*

*Trombetta*, 467 U.S. 479, 485 (1984). This standard of fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. *Id.* With respect to the preservation and destruction of evidence, the government is required to preserve evidence that might be expected to play a significant role in the defendant's defense. *Id.* at 488. "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489 (internal citation omitted).

Although the government has a duty to disclose material, exculpatory evidence, the issue is different when the government fails to preserve "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). In such cases, a defendant can establish a due process violation only if he can show that the government acted in bad faith in failing to preserve the evidence. *Id.* at 58. The inquiry into bad faith "must necessarily turn on the police's knowledge of the exculpatory value of the evidence." *Id.* at 58. However, the "mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." *Riggs v. Williams*, 87 Fed. Appx. 103, 106 (10th Cir. 2004) (citing *Youngblood*). "This is true even if the government acted negligently . . . or even intentionally, so long as it did not act in bad faith." *Id.*

a. <u>*Blood Evidence*</u>

Mr. Armendariz claims that Nestor Chavez was severely beaten by the Montano brothers and the state failed to collect and preserve blood evidence from Mr. Chavez'

clothing. (Doc. 1 at 6-7, Ground One); (Doc. 8 at 1). Mr. Armendariz contends this evidence could have been used to support his defense that he shot the Montano brothers in defense of Mr. Chavez. (Doc. 1 at 6-7).

Respondents argue there was no dispute at Mr. Armendariz' trial that there was a "brawl" leading up to the shooting or that Mr. Chavez was injured and bleeding. (Doc. 13 at 17). Therefore, Respondents contend the blood evidence would have been cumulative to the witnesses' testimony and not particularly useful to the jury in determining whether Mr. Armendariz acted with deliberate intent instead of in self-defense or in defense of Mr. Chavez. *Id.* at 17-18. Moreover, Respondents state Mr. Armendariz has not made a showing of bad faith which is required for him to prove a due process violation for potentially useful evidence. *Id.* at 18.

In his Reply, Mr. Armendariz states Damacio Montano's attack on Mr. Chavez "was what caused the appearance of immediate danger, death, or great bodily harm to Mr. Chavez and myself." (Doc. 20 at 2). He further states "[e]very witness to the shooting or events immediately prior to, was either asked to characterize the fight or they described the fight and were asked to elaborate as to the characterization." *Id.* Therefore, he argues the blood evidence was needed to resolve the dispute between the defense's witnesses and the state's witnesses regarding the severity of the fight. *Id.* at 3.

In considering this claim in Mr. Armendariz' state habeas petition, the state district court noted that conflicting evidence was presented at trial regarding whether the Montano brothers were trying to subdue Mr. Chavez after being attacked by him, or if they were the aggressors and were beating him. (Doc. 13-8 at 9, 13). Nevertheless, the

state court found that Mr. Armendariz' claim that the state failed to collect and preserve blood evidence from Mr. Chavez' clothing was "full of speculation about what the police may have done" and has no merit. *Id.* at 15.

In his Petition, Mr. Armendariz does not establish that evidence from Mr. Chavez' clothing would have changed the outcome of his trial. Instead, evidence from Mr. Chavez' shirt at most would have been cumulative to multiple witnesses' testimony that Mr. Chavez had been beaten and was bleeding. *See, e.g.*, (Doc. 14-5 at 43-48, 68-74) (testimony that the Montano brothers attacked and badly beat Nestor Chavez, Mr. Chavez "had blood all over the front of his face coming down," and Damacio Montano bit Mr. Chavez in the back). Moreover, Mr. Armendariz does not argue, and the record does not indicate, that the state acted in bad faith in failing to preserve evidence from Mr. Chavez' clothing. The Supreme Court has held that, although the state has a duty to disclose material exculpatory evidence, for evidence that "could have been subjected to tests, the results of which might have exonerated the defendant," the government's failure to preserve does not violate due process unless a defendant can show bad faith. *Youngblood*, 488 U.S. at 58-59 ("Police do not have a constitutional duty to perform any particular tests."). Therefore, the Court finds that the state court's decision on this claim was consistent with the components of *Youngblood* and was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Accordingly, the Court recommends this claim be denied.

b. *Surveillance Videotape*

Mr. Armendariz also contends the state failed to preserve the original surveillance videotape. (Doc. 1 at 9-12, Ground Three); (Doc 8 at 2); (Doc. 20 at 5-7).

He states the surveillance tape was "the most important piece of evidence" in his trial, and the tape that was played to the jury was not the original tape. *Id.* at 9-10. Mr. Armendariz argues the tape that was admitted to the jury had "several contradictory chain of custody forms," there are images from the original video that are missing in the video that was admitted, and the original video was a better quality than the one played at his trial. (Doc. 1 at 11); (Doc. 20 at 6). Mr. Armendariz further states that the altered tape does not depict a prolonged struggle and does not show how blood unrelated to the shooting came to be at the scene. (Doc. 1 at 10). Mr. Armendariz concludes that if the jury had seen the original tape, the outcome of his trial "probably would have been different." *Id.*

In their Response, Respondents state that the bar where the shooting took place had a 16-camera surveillance system that allowed for playback only on the original recorder. (Doc. 13 at 13). At trial, Detective Charles Nuanes, who was the assigned case agent, explained the original videotape "doesn't slow the tape down to real time," and "if you don't play it on that particular player, it goes real fast . . . you need that player to slow it down." (Doc. 14-4 at 87). Detective Nuanes testified that he duplicated the original tape by connecting two VCRs and slowing the copy to allow viewing of the tape. *Id.* He further testified that the copy he made was a replica of the original tape and was a fair and accurate representation of what the surveillance system captured. *Id.* at 89-90. Respondents, therefore, claim the issue with the original surveillance tape was not that it was destroyed, but that the original tape could only be viewed on the equipment on which it was recorded. (Doc. 13 at 18-19). Respondents argue the defense was not precluded from acquiring the original tape or equipment, and no one at

trial asked to view the original by bringing the required equipment to the courthouse. *Id.* Finally, Respondents state that production of the original tape would not have affected the outcome of the trial because the footage coupled with witness testimony was devastating to Mr. Armendariz' claim of self-defense or defense of another. *Id.* at 11.

In his Reply, Mr. Armendariz maintains that the version of the surveillance tape that was played for the jury was altered. (Doc 20 at 5-7). He contends the state's efforts to "clear up" and "slow down" the footage when showing it to the jury altered the video in a way that was damaging to his defense. *Id.* at 5-6. For example, he states the tape showed at trial did not show the altercation between Mr. Armendariz and another witness, and does not show Damacio Montano "trying to wrap [Mr. Armendariz] up in a tackling motion." *Id.* at 6. Mr. Armendariz, therefore, argues the loss or destruction of the original tape hindered his defense. *Id.* at 7.

In considering this claim in his state habeas petition, the state district court explained that Mr. Armendariz' counsel was made aware of the original videotape and the specialized equipment available to play it. (Doc. 13-8 at 7). The state court found that Detective Nuanes laid a proper foundation for the duplicate tape by testifying that, while his version was a "slowed down" version of the original, it was nevertheless a "replica" of the original and was "exactly what you see in the original." *Id.* (citing Doc. 14-4 at 97). In addition, Mr. Armendariz' counsel "was expressly given the opportunity to view the version of the original" and "[n]o request was made by anyone to view the original [] by the jury nor to make some arrangement to bring the equipment to the courthouse." *Id.* at 7-8. Therefore, the state court found there was no merit to Mr. Armendariz' habeas claim that the original tape was suppressed because the state did

not hinder the defense from acquiring the original tape or equipment. *Id.* at 8. Moreover, the state court found no support for Mr. Armendariz' claim that the tape was improperly edited or that an unedited version would show a different version of events. *Id.* at 12-13.

The Court agrees that the record does not support a finding that the original tape was suppressed or that it was edited in a way that was prejudicial to Mr. Armendariz' defense. As explained by the state district court, and further discussed below, the record demonstrates that Mr. Armendariz' counsel had tactical reasons to not pursue the original tape because the tape did not support Mr. Armendariz' theory of self-defense or defense of another. *See* (Doc. 13-8 at 8-9) ("Nothing has been submitted to show that the 'original' would probably sway a jury in Defendant's favor and the indications are that Defense counsel was better off with the 'grainy' tape in light of his conduct and in light of all the testimony of witnesses believed by the jury."). Mr. Armendariz also does not allege, and the record does not indicate, that the state acted in bad faith with regard to the original videotape. For these reasons, the Court finds the state court's decision on this claim was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the Court recommends this claim be denied.

c. *Destroying Evidence*

Next, Mr. Armendariz argues the state destroyed evidence by contaminating the scene of the crime. (Doc. 1 at 21-22, Ground Nine). He argues the state did not check the gun or magazine for fingerprints or other forensic evidence, and the agents' failure to better protect the crime scene kept them from discovering "exculpatory evidence such as blood evidence and other physical evidence [that] could have established the

truth." *Id.* at 21. Respondents counter that the issue before the jury was Mr. Armendariz'
state of mind when he shot the Montano brothers, and "no blood or physical evidence
would or even could establish the truth" of that issue. (Doc. 13 at 18). Mr. Armendariz
does not address this claim in his Reply.

The state district court found this claim was speculative and without merit. (Doc.
13-8 at 15). Mr. Armendariz fails to provide support for his claim that the state
contaminated the crime scene, and he fails to explain with any specificity how additional
forensic evidence would have affected his case. Therefore, the Court finds this is a
conclusory allegation without supporting facts, and the Court recommends the claim be
denied. *See Hall*, 935 F.2d at 1110 (conclusory allegations alone, without supporting
factual averments, are insufficient to state a valid claim).

### d. *Planting Evidence*

Mr. Armendariz also contends the state planted evidence. (Doc. 1 at 22-24,
Ground Ten). He states he was unarmed on the night of the shooting and was handed a
gun by his friend Sandra Baray. *Id.* at 23. Mr. Armendariz states that Ms. Baray was
later shown a picture of the weapon the state claimed was used to shoot the Montano
brothers, and she said it was not the weapon she passed to Mr. Armendariz. Therefore,
Mr. Armendariz argues that the gun the state claims was used in the shooting was not
the gun Mr. Armendariz fired, so the state must have planted the other gun at the
scene. *Id.*

In their Response, Respondents argue this claim is without merit because
witness testimony at the trial was consistent that the only person with a gun at the time
of the shooting was Mr. Armendariz. (Doc. 13 at 19). Moreover, Respondents note that

when Mr. Armendariz recounted the events to an examining psychiatrist, he stated the only gun at the scene was the one he used. *Id.* In his Reply, Mr. Armendariz states that he does not know "definitively" that someone planted evidence, but Ms. Baray's statement that she did not recognize the gun that was used "suggests tampering" by the state. (Doc. 20 at 8).

The state district court rejected Mr. Armendariz' claim in his state habeas petition that there was another gun at the scene, finding the argument was without merit and contrary to the facts presented at trial. (Doc. 13-8 at 10-11). For example, the state court noted that eyewitness testimony corroborated the state's case that the only person who had a gun at the time of the shooting was Mr. Armendariz, and the ballistics witness tied six of the casings and bullets from Damacio and Eric Montano's bodies to the same gun. *Id.* In addition, the state court relied on Mr. Armendariz' statements to the examining psychiatrist that there were no guns present other than the one he used. *Id.* at 11.

The record supports the state court's finding that the "evidence is overwhelming and uncontradicted that neither decedent Damacio nor anyone else had a gun as Defendant shot Damacio," and that "[t]here is not a hint of evidence that a second gun was used." *Id.* For example, at trial multiple witnesses testified that Mr. Armendariz had a gun on him throughout the evening of the shooting and this was the only gun used during the shooting. *See, e.g.*, (Doc. 14-2 at 189, 200), (Doc. 14-3 at 24), (Doc. 14-5 at 76-79, 99) (testimony of Monica Padilla, Jeff Medina, Romulo Barela, and Cheri Padilla). Therefore, the Court finds the state court's decision on this claim was not

contrary to clearly established federal law and was not based on an unreasonable determination of the facts, and recommends the claim be denied.

### 2.  *Ineffective Assistance of Counsel Claims*

Next, Mr. Armendariz claims his counsel was ineffective for failing to investigate the shirt that Mr. Chavez was wearing which was torn, bloody, and had a bite mark with saliva. (Doc. 1 at 8-9, Ground Two); (Doc. 8 at 1). Mr. Armendariz also contends his counsel was ineffective for failing to investigate the surveillance video that was played for the jury. (Doc. 1 at 12-13, Ground Four); (Doc. 8 at 2). Respondents counter that Mr. Armendariz has not demonstrated that his counsel's performance prejudiced his defense and that the state court correctly rejected these claims in Mr. Armendariz' state habeas petition. (Doc. 13 at 20-21). In his Reply, Mr. Armendariz argues that evidence from Mr. Chavez' shirt could have helped support his defense of another theory by showing that Mr. Chavez was severely beaten. (Doc. 20 at 2-5).

In *Strickland v. Washington*, the Supreme Court announced "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687 (1984). When a convicted defendant claims ineffective assistance, the defendant must first "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Put differently, counsel's representation must have been "reasonable considering all the circumstances." *Id.* In applying the objective standard of reasonableness to counsel's performance, a court gives considerable deference to an attorney's strategic decisions, and the attorney "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*,

466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691.

In addition to ineffective assistance, the defendant must show that "deficiencies in counsel's performance" were "prejudicial to the defense." *Id.* at 692. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Importantly, the Court must be "doubly deferential" to a state court's decision when a petitioner claims ineffective assistance of counsel and a state court has decided the claim against the petitioner on the merits. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The Court must defer to the state court's determination that counsel's performance was not deficient and to counsel's decisions on how to represent the client. *See Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009). In applying these standards, the question before the Court is whether a state court's decision was unreasonable, not simply incorrect. *Knowles*, 556 U.S. at 123.

### a. <u>Blood Evidence</u>

Mr. Armendariz claims his counsel was ineffective for failing to investigate evidence from Mr. Chavez' shirt, which could have been used to support his theory that

he shot the Montano brothers in defense of Mr. Chavez. (Doc. 20 at 2-5). However, as explained by the state district court, Mr. Armendariz' counsel presented evidence to the jury encompassing Mr. Armendariz' contention that Mr. Chavez was being severely beaten. For example, Mr. Armendariz' counsel presented eyewitness testimony showing the "decedent and his brother were beating Nestor Chavez in a bad way and choking him to unconsciousness, . . . and that decedent kept beating Nestor Chavez after being told by Defendant to stop." (Doc. 13-8 at 9) (citing Doc. 14-5 at 43-48, 68-74).

Mr. Armendariz does not show that any additional evidence from Mr. Chavez' shirt would have been anything more than cumulative. Therefore, the Court finds that Mr. Armendariz has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, or that the result of the proceeding would have been different but for his counsel's allegedly unprofessional errors. *See Harrington v. Richter*, 562 U.S. 86, 108 (2011) ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858-59 (10th Cir. 2005) (explaining that a habeas petitioner's factual allegations must be "specific and particularized, not general or conclusory" in order to demonstrate the state court's findings were unreasonable). Accordingly, the Court finds that the state court's decision on this claim was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. §§ 2254(d)(1)-(2). The Court recommends this claim be denied.

### b. *Surveillance Tape Evidence*

Next, Mr. Armendariz claims his counsel was ineffective for failing to watch the surveillance videotape until just prior to the start of the trial, and for failing to watch the original tape on the proper equipment. (Doc. 1 at 12 -13). The state district court found this claim had no merit because Detective Nuanes credibly testified that the copy of the tape that was shown to the jury was a replica of the original and contains exactly what is in the original. (Doc. 13-8 at 7) (citing Doc. 14-4 at 87-90, 97). The state court further found that "[t]he record and Mr. Armendariz' arguments and evidence fail to demonstrate that a 'clearer' version of the video would change the result" of the trial, and it was "apparent that Defense counsel concluded that viewing the 'original' video by the jury could make things worse for his client and therefore did not pursue that avenue." *Id.* at 9, 13. Indeed, the state court found that defense counsel's tactics in not pursuing the original video were reasonable because they "left open his ability to argue that the video showed 'ghosts' as he did in closing." *Id.* (citing defense counsel's closing argument at Doc. 14-6 at 77-78: "The surveillance camera is so bad, folks, that the State has to call in an interpreter . . . they are just ghost images.").

Mr. Armendariz provides no support for his claim that his counsel's failure to watch the video until just prior to the start of trial, or his failure to watch the original video on the original equipment, affected his defense. Therefore, the Court finds that this claim is conclusory and does not demonstrate that Mr. Armendariz' counsel's performance fell below an objective standard of reasonableness. *See Hall*, 935 F.2d at 1110 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim). As such, the Court finds that the state court's decision

on this claim was not contrary to clearly established federal law, and was not based on an unreasonable determination of the facts, and recommends this claim be denied.

### 3. *Alleged Errors by Trial Court*

Mr. Armendariz next claims the trial court erred by: (1) allowing Detective Nuanes to narrate the surveillance video as it was played for the jury; (2) holding a conference regarding Mr. Armendariz' request to change defense counsel outside of Mr. Armendariz' presence; and (3) excluding evidence of Damacio Montano's prior violent conduct. (Doc. 1 at 14-15, 19-21, 24-26, Grounds Five, Eight, and Eleven); (Doc. 8 at 2-4); (Doc. 20 at 8). Respondents counter that these claims are not cognizable in federal habeas proceedings and did not violate Mr. Armendariz' constitutional rights. (Doc. 13 at 13-16).

"Ordinarily, a state court's evidentiary rulings cannot be challenged in a federal habeas petition because they do not involve clearly established federal law." *Aviles v. Archuleta*, 389 Fed. Appx. 853, 857-58 (10th Cir. 2010) (unpublished); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The Tenth Circuit has explained that state court's rulings that "merely raise questions of state law" are "cognizable in habeas only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002).

### a. *Detective Nuanes' Testimony*

Detective Nuanes testified at trial that he duplicated the surveillance videotape by slowing it down so it could be played on a VCR, and, as the tape was played for the jury, he described what was being shown in the context of what he learned from

witnesses who were at the bar at the time the recording was made. (Doc. 14-4 at 86-93, 97). Mr. Armendariz argues the trial court erred by allowing Detective Nuanes' testimony about the duplicate videotape because he "was the third in a line of officers from different departments to handle this tape," "was not the videographer," and "did not participate in the recording." (Doc. 1 at 14). Respondents argue this evidentiary issue only implicates state law so it is not cognizable in a federal habeas proceeding. (Doc. 13 at 14).

The New Mexico Rules of Evidence allow duplicates "unless there is a genuine question raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." NMRA 11-1003. Federal habeas corpus relief, however, does not extend to state court evidentiary determinations. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of federal habeas courts to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."). Therefore, to determine whether the state's evidentiary ruling amounts to a violation of due process, the Court must look at whether the challenged ruling was fundamentally unfair. *See Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005) (instructing courts to look at whether the challenged evidence "so infused that trial with unfairness as to deny due process of law").

Detective Nuanes testified the copy of the videotape he made was a fair and accurate representation of what the surveillance system captured, and the trial court found the state laid an adequate foundation for the authenticity of the video recording and the recording was copied without any alteration. (Doc. 13-8 at 7); (Doc. 14-4 at 97).

The Court finds that this decision was reasonable in light of the evidence presented, and Mr. Armendariz has not established that Detective Nuanes' testimony was "fundamentally unfair." Therefore, the Court finds the trial court's evidentiary ruling did not violate Mr. Armendariz' due process rights and recommends this claim be denied.

### b. *Conference Outside of Mr. Armendariz' Presence*

On July 1, 2003, just prior to the start of his trial, Mr. Armendariz addressed letters to the trial judge and his defense counsel asking for a continuance of the trial to allow for the appointment of new counsel because he did not believe that his attorney was acting in his best interest. (Doc. 13-2 at 25); (Doc. 13-4 at 37). Mr. Armendariz' counsel responded to the letter on July 9, 2003, and told Mr. Armendariz that the state judge held a conference with Mr. Armendariz' counsel and the prosecutor regarding the letter, and the judge found Mr. Armendariz had not articulated adequate justification for the appointment of new counsel. (Doc. 13-4 at 37). Mr. Armendariz argues that if he had been present for this conference, he "could have provided information useful to [his] own defense." (Doc. 1 at 20); (Doc. 20 at 8).

A defendant has a due process right to be present at all critical stages of his trial. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, that right is not absolute, and has been limited to a "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.*; *see also Crease v. McKune*, 189 F.3d 1188, 1192 (10th Cir. 1999). Mr. Armendariz does not state what information he would have provided had he been present at the conference. Moreover, the Supreme Court has concluded that "the right to counsel of choice does not extend to defendants who require counsel to be appointed

for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (stating the trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar"). Because Mr. Armendariz has not shown this conference was critical to the outcome of his trial, the Court finds no violation of Mr. Armendariz' constitutional rights and no error in the state court's ruling on this issue. Accordingly, the Court recommends this claim be denied.

### c. *Domestic Violence Evidence*

Mr. Armendariz also challenges the trial court's ruling denying the introduction of evidence showing prior violent conduct by Damacio Montano. (Doc. 1 at 24). The New Mexico Supreme Court considered this claim in Mr. Armendariz' direct appeal, and held that "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor when the defendant is claiming self-defense." *Armendariz*, 2006-NMSC-036, ¶ 17. While Mr. Armendariz argues this evidence would have shown Damacio Montano's "propensity for violence" (Doc. 1 at 25), he does not demonstrate that the exclusion of the evidence was "fundamentally unfair." *See Dowling v. United States*, 493 U.S. 342, 352 (1990) (holding that infractions that violate fundamental fairness are defined "very narrowly"); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989) (holding that a federal habeas court will not disturb a state court's ruling on admission of prior bad acts evidence "unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission") (overruled on other grounds). Therefore, the Court finds the ruling does not constitute a violation of Mr. Armendariz' due process rights, and recommends this claim be denied.

### 4. _New Witness Testimony_

Mr. Armendariz also claims to have new, exculpatory witness testimony. (Doc. 1 at 15-17, Ground Six); (Doc. 20 at 7-8). He presents a list of seven people he claims possess testimony that was not heard at trial, specifically: Allan Crawford and Sergeant Robert Ferreyra, who would testify about the original surveillance videotape; Jack Blair, who would testify about the crime scene being contaminated and the original surveillance videotape; Charles Apodaca; Vangie Romero; Sandra Baray, who would testify about providing Mr. Armendariz with the gun used in the shooting; and Mr. Armendariz himself, who would testify that he was the victim of a crime and feared for his life and for Mr. Chavez' life. (Doc. 1 at 16-17). Respondents note that two of the people listed by Mr. Armendariz—Charles Apodaca and Vangie Romero—did testify at trial. (Doc. 13 at 25). Respondents contend the state court correctly rejected this claim and Mr. Armendariz does not present any new evidence that was not already part of his trial. _Id._ at 25-26.

In considering this claim in Mr. Armendariz' state habeas petition, the state court found "[a]ll of the points raised by Defendant were presented through other defense witnesses," and "the additional witnesses would have been repetitive and tactically it may be better to leave them off as witnesses as at least some were convicted felons." (Doc. 13-8 at 15). Regarding Mr. Armendariz testifying at his trial, the state court found multiple reasons why that would not have been beneficial for his defense. _Id._ at 13-14. For example, the state court reasoned that Mr. Armendariz would have faced questions on cross-examination about evidence showing: he was carrying a gun inside of the bar hours before the shooting; he fled the scene and hid the gun immediately after the

shooting; and he fired the gun seven times into Damacio Montano with some of the shots being fired into his back and after Damacio Montano had fallen. *Id.* The state court further noted that had Mr. Armendariz testified, his prior conviction for aggravated battery with a deadly weapon could have been introduced. *Id.* at 14. Therefore, the state court held: "There are numerous and compelling reasons why it would have been extremely unwise for Mr. Armendariz to testify." *Id.*

The Tenth Circuit has explained that "the speculative witness is often a two-edged sword. For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (finding that "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney"). Mr. Armendariz does not provide a basis for a finding that any of these witnesses' testimony would have been helpful to his defense, as opposed to having a cumulative, neutral, or even harmful effect. Moreover, each subject that Mr. Armendariz contends the witnesses would testify about was covered at Mr. Armendariz' trial. To the extent Mr. Armendariz claims he was prevented from testifying at trial, he presents no support for this claim and the record does not reflect that he requested to testify. *See United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983) (holding the defendant's right to testify was not denied where "defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify"). For these reasons, the Court finds the state court's decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts. Therefore, the Court recommends the claim be denied.

5. *Insufficient Evidence to Support Conviction*

Mr. Armendariz argues there was insufficient evidence to support his conviction for first-degree murder. (Doc. 1 at 17-19, Ground Seven); (Doc. 8 at 3). He contends that because the events leading up to the shooting took place suddenly and he was panicked, he did not have time to develop the intent necessary to commit first-degree murder. (Doc. 1 at 18) (relying on the report by examining psychologist Dr. Eric Westfried, Doc. 13-3 at 112-124). Because he was not asked what his state of mind was at the time of the shooting, Mr. Armendariz claims there was insufficient evidence presented at trial to support his conviction. (Doc. 8 at 3). Respondents counter that there was sufficient testimony and evidence presented at trial to support Mr. Armendariz' first-degree murder conviction. (Doc. 13 at 10-13).

The United States Supreme Court has held that evidence is sufficient to uphold a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324, n.16. The court's inquiry into the sufficiency of the evidence is not whether the court believes that the evidence at trial established guilt beyond a reasonable doubt, but whether, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007).

New Mexico defines murder in the first degree as "the killing of one human being by another without lawful justification or excuse . . . by any kind of willful, deliberate and premeditated killing." N.M.S.A. § 20-2-1(A) (1994). A jury must find beyond a reasonable doubt that: (1) the defendant killed the victim; (2) with the deliberate intention to take away the life of the victim or any other human being; and (3) this happened in New Mexico on or about the date specified in the criminal information. UJI 14-201 NMRA. A deliberate intention "may be inferred from all of the facts and circumstances of the killing," and "may be arrived at in a short period of time." *Id.* However, a "a mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill." *Id.*

At trial, multiple witnesses testified that on the night of the shooting two groups inside the bar were engaged in fighting and name-calling. The groups mainly consisted of off-duty law enforcement officers (including the Montano brothers) and people who had formerly been incarcerated (including Mr. Armendariz). *See* (Doc. 14-2 at 114-126). Eventually, the fighting escalated, everyone was forced out of the bar, and the doors were locked. *Id.* at 121-23, 131-34. Witness testimony differs regarding what then happened in the parking lot. Some witnesses testified the Montano brothers attacked and badly beat Nestor Chavez, Mr. Chavez "had blood all over the front of his face coming down," and Damacio Montano bit Mr. Chavez in the back. (Doc. 14-5 at 43-48, 68-74). Others testified the Montano brothers were not armed and were not the aggressors, Eric Montano was attempting to subdue Mr. Chavez in a police hold, and Damacio Montano was advising people to calm down. (Doc. 14-2 at 163-73). Regardless, multiple witnesses testified that Mr. Armendariz retreated briefly, returned

with a gun, and opened fire, shooting Eric Montano once and Damacio Montano seven times. *See Armendariz*, 2006-NMSC-036, ¶ 4.

Even though contradictory evidence was presented at trial, evidence was presented that supports a finding that Mr. Armendariz acted with deliberate intent. For example, one witness testified that Mr. Armendariz retrieved a gun from the backseat of a car, returned to where the Montano brothers and Mr. Chavez were, and fired about eight or nine shots in rapid succession towards them. *Id.* at 166-76. This witness further testified that about 20 or 25 seconds passed between when Mr. Armendariz pointed the gun and when he shot. *Id.* at 180. In addition, the state presented evidence that Mr. Armendariz and Mr. Chavez instigated the altercation, Damacio Montano was shot seven times with at least one entering his back, and Mr. Armendariz fled the scene of the crime and the state. *See Armendariz*, 2006-NMSC-036, ¶¶ 3-5; (Doc. 13-8 at 8-14).

The Tenth Circuit has explained that "a jury is permitted to draw inferences of subjective intent from a defendant's objective acts," and that "even when a defendant . . . denies having the requisite intent, a jury may disbelieve the defendant if the defendant's words and acts in light of all the circumstances make the defendant's explanation seem improbable." *Torres v. Mullin*, 317 F.3d 1145, 1153 (10th Cir. 2003) (citation and internal brackets and quotation marks omitted). The Court finds that it was reasonable for the jury to infer that Mr. Armendariz acted with deliberate intent based on the evidence presented at trial. Though Mr. Armendariz argues he did not have enough time to develop the requisite intent, the evidence was sufficient for a rational juror to conclude otherwise. Moreover, the Court cannot accept Mr. Armendariz' version of the facts where the "record of historical facts . . . supports conflicting inferences." *Jackson*,

443 U.S. at 326. Under those circumstances, the Court must resolve any conflicts in favor of the prosecution. *Id.* Therefore, the Court finds the state court's decision on this claim is not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts presented during the trial. Accordingly, the Court recommends this claim be denied.

### 6. *Double Jeopardy*

Finally, Mr. Armendariz claims his convictions for aggravated battery and attempted murder violate double jeopardy. (Doc. 1 at 26-27, Ground Twelve); (Doc 8 at 12). He argues that the facts used to convict him for aggravated battery with a deadly weapon are the same as those used for his attempted murder conviction. (Doc. 1 at 26). Therefore, Mr. Armendariz states "[t]he aggravated battery charge must be vacated as violative of protection against double jeopardy." *Id.*

In their Response, Respondents note that the New Mexico Supreme Court rejected this argument in Mr. Armendariz' direct appeal, finding that the New Mexico legislature intended to create separately punishable offenses for these two crimes. (Doc. 13 at 23) (citing *Armendariz*, 2006-NMSC-036, ¶¶ 19-30). Therefore, the New Mexico Supreme Court found Mr. Armendariz' convictions for aggravated battery and attempted murder did not violate the prohibition against double jeopardy. *Armendariz*, 2006-NMSC-036, ¶¶ 31.

Respondents further note that six years after this ruling, the New Mexico Supreme Court in *State of New Mexico v. Swick*, overruled *Armendariz*, rejecting its double jeopardy analysis and finding that double jeopardy prohibits multiple convictions for aggravated battery and attempted murder based on the same conduct. 2012-NMSC-

018, ¶¶ 19-25, 279 P.3d 747. Nevertheless, Respondents argue that Mr. Armendariz'

double jeopardy claim should be denied because the New Mexico Supreme Court

properly relied on federal law in deciding this issue in his direct appeal. (Doc. 13 at 24).

Respondents contend that in *Swick* the New Mexico Supreme Court merely modified its

approach to the double jeopardy analysis, but the court still correctly applied federal law

when it decided *Armendariz*. *Id.* Additionally, Respondents claim that even if Mr.

Armendariz' conviction for aggravated battery is vacated, his sentence for aggravated

battery merged with his sentence for attempted murder, so he was not doubly punished

and his "dual convictions are entirely constitutional." *Id.* at 25 (citing Doc. 13-1 at 2,

Judgment and Sentence, merging Mr. Armendariz' sentence for Aggravated Battery

with his sentence for Attempt to Commit Murder in the First Degree).

　　　The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any

person be subject for the same offence to be twice put in jeopardy of life or limb." U.S.

Const. Amend. V. This clause has been interpreted to prohibit both "successive

prosecutions for the same offense after acquittal or conviction" and the imposition of

"multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S.

721, 727-28 (1998). When a defendant is charged with violating multiple criminal

statutes for the same underlying acts or omissions, the double jeopardy doctrine

"prevent[s] the sentencing court from prescribing greater punishment than the

legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 365 (1983); *see also Wood v.

Milyard*, 721 F.3d 1190, 1194 (10th Cir. 2013) ("Simply put, a court cannot impose

cumulative punishments for the same offense unless the legislature has authorized it to

do so."). In *Blockburger v. United States*, the United States Supreme Court held that a

person may be prosecuted for more than one crime based on the same conduct if: (1) each crime requires proof of a fact the other does not; and (2) the legislature has expressed its intent to impose cumulative punishment for the same conduct under separate statutory provisions. 284 U.S. 299, 304 (1932); *see also United States v. Pearson*, 203 F.3d 1243, 1267-68 (10th Cir. 2000).

On Mr. Armendariz' direct appeal, the New Mexico Supreme Court applied the *Blockburger* test and found that his convictions for attempted first-degree murder and aggravated battery arose from the same conduct and each crime contained an element that the other did not. 2006-NMSC-036, 23-24. Moving to the second *Blockburger* prong, the New Mexico Supreme Court considered whether the legislature intended to impose cumulative punishment for those crimes. The *Armendariz* court reasoned that the two statutes were enacted to address different social harms, there was no language in either statute indicating the crimes were alternative ways of committing the same crime, and the two crimes did not necessarily have to be violated at the same time. *Id.* ¶ 25. Based on this reasoning, the New Mexico Supreme Court found that the legislature authorized multiple punishments for attempted murder and aggravated battery and upheld Mr. Armendariz' convictions for both crimes. *Id.*

In *Swick*, however, the New Mexico Supreme Court reconsidered its holding in *Armendariz*. 2012-NMSC-018. The *Swick* court explained that "modifications to our double jeopardy jurisprudence since deciding *Armendariz* lead us to conclude that the Legislature did not intend multiple punishments for attempted murder and aggravated battery arising from the same conduct because the latter is subsumed by the former." *Id.* ¶ 19. Specifically, the court explained that the application of *Blockburger* "should not

be so mechanical that it is enough for two statutes to have different elements," and that the court was incorrect in stating that the statutes were enacted to address different social harms. *Id.* ¶¶ 23-24, 29. The court further reasoned that any ambiguity regarding legislative intent should have been resolved in favor of lenity. *Id.* ¶ 30. Therefore, the New Mexico Supreme Court held that convictions for attempted murder and aggravated battery based on the same conduct violate the prohibition against double jeopardy and overruled its decision in *Armendariz*. *Id.* ¶ 31.

Based on the New Mexico Supreme Court's decision in *Swick*, Mr. Armendariz' convictions for attempted murder and aggravated battery are prohibited by the double jeopardy doctrine. Respondents argue that Mr. Armendariz' double jeopardy claim should be denied because the New Mexico Supreme Court properly applied *Blockburger* in deciding this issue on direct appeal, so the holding in *Armendariz* is not contrary to federal law. (Doc. 13 at 24). However, the Tenth Circuit has explained that a state court's application of the *Blockburger* test "must give way when we have express legislative direction" regarding double jeopardy. *Wood*, 721 F.3d at 1196. In *Wood*, the Tenth Circuit considered the district court's holding that there was no double jeopardy violation for convictions for first and second degree murder based on the same conduct because, applying the *Blockburger* test, each offense contained elements the other did not. *Id.* at 1195. The Tenth Circuit reversed the district court, explaining that the Colorado Supreme Court had expressly held that the Colorado legislature intended to permit only one murder conviction for the killing of a single victim, and stating that such guidance cannot be ignored and replaced with the results of the *Blockburger* test. *Id.* The court explained that *Blockburger* is a "proxy" for legislative intent that "must give

way" to express legislative direction, and that courts "are not at liberty to ignore that guidance and replace it with the results of a proxy test intended only to fill gaps when express legislative direction is unavailable." *Id.* (citing *Garrett v. United States*, 471 U.S. 773, 779 (1985) ("[T]he *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of the legislature.")).

In this case, while Respondents may be correct that the New Mexico Supreme Court applied *Blockburger* in Mr. Armendariz' direct appeal in accordance with federal law, the fact remains that the New Mexico Supreme Court has expressly found that the legislature did not intend multiple punishments for attempted murder and aggravated battery arising from the same conduct. The New Mexico Supreme Court's holding about state legislative policy "binds us," and means that Mr. Armendariz' convictions for attempted murder and aggravated battery violate the prohibition against double jeopardy. *Wood*, 721 F.3d at 1195-96 (holding that "federal double jeopardy doctrine coupled with Colorado's legislative judgment compel" the conclusion that one of Mr. Wood's convictions must be vacated); *see also Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998) ("In determining whether a defendant's conduct constitutes a single offense or separate offenses for double jeopardy purposes, a federal court defers to the state court's interpretation of the relevant statutory provisions.") (citation omitted).

Additionally, Respondents argue this claim should be denied because even if Mr. Armendariz' conviction for aggravated battery is vacated, his sentence for this conviction merged with his sentence for attempted murder, so he was not doubly punished. (Doc. 13 at 25) (citing Doc. 13-1 at 2, Judgment and Sentence). The Tenth Circuit addressed this argument in *Wood* as well, and explained that even though Mr.

Wood "received only a single life sentence for his two murder convictions," the argument must be rejected. *Wood*, 721 F.3d at 1195. The Court explained that the double jeopardy doctrine prohibits cumulative punishments not authorized by the legislature, and "it's long since settled that a conviction, even a conviction without a corresponding sentence, amounts to a punishment for purposes of federal double jeopardy analysis." *Id.* at 1195-96. Therefore:

> Even when it results only in a concurrent prison sentence or no prison sentence at all, a conviction surely bears adverse collateral consequences that may not be ignored: its presence on a defendant's record may delay her eligibility for parole or result in an increased sentence under a recidivist statute for a future offense, it may be used to impeach the defendant's credibility and it certainly carries the societal stigma accompanying any criminal conviction. All of this is plainly 'punishment.'

*Id.* at 1196 (citation omitted). Therefore, the Tenth Circuit ordered that one of Mr. Wood's convictions must be vacated.

For these same reasons, the Court finds that one of Mr. Armendariz's convictions must be vacated even though it will not affect his sentence. *See id.* ("As a practical matter, Mr. Wood may well wind up serving the same life sentence no matter the outcome of this proceeding. But as a matter of law, he is entitled to serve it with only one murder conviction on his record."). Therefore, the Court recommends that Mr. Armendariz' Petition be granted in part, and this case be remanded to state court to vacate his conviction for aggravated battery. *See Jones v. Thomas*, 491 U.S. 376, 387 (1989) ("[W]here concurrent sentences are imposed, unlawful imposition of two sentences may be cured by vacating the shorter of the two sentences."); *Swick*, 2012-

NMSC-018, ¶ 31 (ordering Mr. Swick's convictions for aggravated battery be vacated because they carry less punishment than his convictions for attempted murder).

## III.     Conclusion

For the foregoing reasons, the Court finds that for Grounds One through Eleven of Mr. Armendariz' Petition, the state courts' decisions were not contrary to clearly established federal law, nor did they result in unreasonable determinations of fact in light of the evidence presented. However, the Court finds that Mr. Armendariz' convictions for attempted first-degree murder and aggravated battery violate the constitutional prohibition on double jeopardy. The Court therefore **RECOMMENDS** Mr. Armendariz' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, (Doc. 1), be **GRANTED IN PART** and **DENIED IN PART**, this case be **REMANDED** to State Court, and Mr. Armendariz' conviction for aggravated battery be **VACATED.**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE